

## Financial secrecy
# Cracking the shells

**A hedge fund becomes an accidental hero of anti-corruption campaigners**

Apr 11th 2015 | From the print edition

"VULTURE" funds, which chase distressed borrowers for payment of outstanding debt, have few friends outside finance. Occasionally, though, their hunt for profit aligns neatly with calls for greater financial openness by campaigners, winning the rapacious funds unlikely admirers. So it has proved as Elliott Management looks to enforce court rulings demanding that Argentina cough up $2 billion it owes to the hedge fund. A collateral benefit of the fund's hunt for assets is that it has put a crack in the wall of secrecy around American shell companies, which are among the world's most impenetrable and thus often used for nefarious purposes.

The case involves $65m suspected of having been embezzled and laundered abroad by Lazaro Baez, a building tycoon with ties to Cristina Fernández de Kirchner, Argentina's president, and her late husband (and predecessor), Nestor. Elliott joined the sleuthing, its logic being that any stolen money was misappropriated state funds and could therefore be grabbed to satisfy judgments in its favour.

The money trail led to Nevada, home to 123 brass-plate firms that Elliott suspected of being linked to the alleged fraud. But piercing the corporate veil in the state is far from easy. Its record-keeping requirements are minimal even by American standards.

Elliott sued in Nevada for information on the shell companies from their agent, MF Nevada, and, by association, Mossack Fonseca, the Panamanian law firm understood to be MF's parent. Even if no records were held in Nevada, Mossack could be ordered to disclose what was on file in Panama or a third jurisdiction, Elliott hoped.

MF Nevada claimed, implausibly, that it was independent of Mossack. In a series of legal skirmishes, Elliott established numerous links between MF and Mossack: for instance that MF sets up Nevada companies exclusively for Mossack's clients and that the employment contract of MF's sole employee was signed by Mossack's bosses.

Satisfied that MF was an "alter ego" of Mossack, a judge recently ruled that Mossack was subject to the jurisdiction of American courts and had to comply with the information subpoena. This was a big win for Elliott—and for anyone wanting to know more about shell companies. America is on some measures less compliant with anti-money-laundering standards for corporate vehicles than any other country.

The ruling will also increase scrutiny of one of the biggest purveyors of such vehicles: Mossack is an industrial-scale incorporator of anonymous companies. Shells it helped set up (but is not legally liable for) have been linked to tax evaders and kleptocrats. Mossack says it does not advise clients on the use of companies it forms, and that "we have never been investigated for any crime, including money-laundering."

Elliott is not alone in trying to penetrate the murk, but its combination of money, tenacity and legal nous is rare. The fight is not over, however. If the relevant records are in Panama, a country with strict secrecy laws, they are unlikely to be produced in a hurry. Mossack has challenged the alter-ego ruling. The case will now move to a federal court. Separately, Elliott has won an order in the Seychelles, requiring Mossack to provide information on firms there linked to the Nevada entities. But the law firm is yet to hand over any documents.

Elliott is confident it can build a clear picture of the alleged fraud and use it to claw back some of what it is owed. Its efforts have a collateral benefit, too. Argentina's elites are no longer universally hostile towards the firm, some of them applauding its fight to expose the corruption of political and business rivals.

From the print edition: Finance and economics