UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————
)
SECURITIES AND EXCHANGE )
COMMISSION, )
)
    Plaintiff, )
)     Civil No. 11-cv-8094 (PAE)
        v. )
)
CHETAN KAPUR, et al. )
)
    Defendants. )
———————————————————————)

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF LAW

## INTRODUCTION

The United States Securities and Exchange Commission ("Commission") submits this Memorandum of Law in support of its Motion Requesting that the Court make additional findings to support the Court's July 1, 2015 Opinion and Order ("Contempt Order"). The Commission specifically requests that the Court find that the funds in the Family and Children Charitable Foundation's Bank Vontobel account originated from co-defendant ThinkStrategy Capital Management LLC's ("ThinkStrategy") Wachovia Bank account and was, in essence, Chetan Kapur's money.[1]

On June 1, 2016 and December 16, 2016, the Commission received records ("Swiss Records") from the Swiss Financial Market Supervisory Authority ("FINMA") pursuant to the IOSCO Multilateral Memorandum of Understanding ("MMOU").[2] FINMA produced records

---

[1] Dkt. No. 68. ThinkStrategy Capital Management, LLC was a Delaware Limited Liability Company formed in 2002 that is now defunct. ThinkStrategy served as general partner and investment advisor to TS Multi-Strategy Fund and ThinkStrategy Capital Fund.
[2] Dkt Nos. 106 and 137.

gathered from Societe Generale ("SG Bank")[3], Banque Safra Sarasin ("Bank Sarasin") and Bank Vontobel AG ("Bank Vontobel") for the following entities used by Chetan Kapur:  TS Multi-Strategy Fund Ltd. ("Multi-Strategy Fund"); CCO Limited ("CCO"); APC LLC ("APC"); Alternative Asset Investment Advisory Ltd. S.A. ("AAIA") and the Family Children and Charitable Foundation ("Foundation").[4]  In sum, the Swiss Records show the movement of Kapur's money from ThinkStrategy's Wachovia account to Bank Sarasin's accounts held by CCO, AAIA and APC, and finally to its current location at the Foundation's Bank Vontobel account.  The Swiss Records augment the Court's finding that the funds in the Foundation's account belong to Chetan Kapur and that he needs to return those funds to the United States to purge contempt.

## BACKGROUND

On July 1, 2015, the Court found Chetan Kapur in contempt of the Court's Judgment and provided several ways for Kapur to purge contempt.[5]  During Kapur's confinement, the Court held seven hearings to determine whether Kapur has purged his contempt.  Since its initial determination, the Court has narrowed the basis for Kapur to purge contempt to his return and relinquishment of the $2 million held at the Foundation's Bank Vontobel account.  As of this filing, Kapur has not returned these funds to the United States.

---

[3]  The Contempt Order did not concern the Multi-Strategy Fund's SG Bank account, and therefore this Supplemental Post-Hearing Memorandum will not address the SG Bank documents.  The Multi-Strategy Fund was organized in the British Virgin Islands, and with its domestic sister hedge fund, TS Multi-Strategy Fund, L.P., were managed by ThinkStrategy from 2004 until November 2010 when the funds entered into voluntary liquidation and were placed under the control of court-appointed receivers.  *See* Dkt. No. 1, at ¶12. (Complaint).
[4]  References to the Transcript are to "Tr. at p._", to Commission Exhibits as "SEC Ex. __", Schwarz's Exhibits as "Sch. Ex. __", and to defendant's Exhibits as "Def. Ex. __."  In addition, the Commission will continue the numbering from the hearing, so the first exhibit herein will be SEC Ex. 31.
[5]  Contempt Order, p. 20-36.

### A. Bank Sarasin

Kapur used Bank Sarasin accounts held by CCO, AAIA and APC to hold and manage his assets.  The Swiss Records provide information on the creation, funding and dissipation of CCO, AAIA and APC's Bank Sarasin accounts.[6]

### 1.  CCO LTD

CCO is a British Virgin Islands company incorporated on February 2, 2007, which identifies Kapur as a director.[7]  On June 29, 2007, CCO opened an account at Bank Sarasin with Kapur as the sole signatory and beneficial owner of the account.[8]  CCO has surfaced several times in the post-judgment litigation before this Court because of the mystifying and ill-explained July 27, 2007 transfer of $2,144,147.20 from ThinkStrategy's Wachovia account to CCO ("Wachovia Transfer").[9]

On November 17, 2010, Chetan Kapur testified before SEC attorney Darren Long that the Wachovia Transfer was a "loan" to his brother Karan Kapur.[10]  Kapur later testified that he misspoke when he testified that the Wachovia Transfer was a loan to his brother Karan Kapur, but could not recall the purpose of the transfer.[11]  Kapur's evasive testimony is telling, because through it, he admits that the money transferred to CCO was *his* money over which he exercised

---

[6]  In addition, Kapur attempted to transfer control of these entities after the Court's Judgment was entered against him.  The peculiar nature of this transfer is that he attempted to change control of AAIA and CCO's accounts, which were empty.  For example, on December 4, 2014, over two years after Chetan Kapur liquidated AAIA's Bank Sarasin account, Kabir Kapur sent a change of beneficiary form to Bank Sarasin.  Supra, SEC Ex. 35 at 50-61.  December 4, 2014 was less than week after the Commission questioned Chetan Kapur about the Mossfun Trust.

[7]  SEC Ex. 31 (CCO Limited's Memorandum of Articles of Association).

[8]  SEC Ex. 32 (CCO's Bank Sarasin account opening application).

[9]  Contempt Order, P. 20-25; Tr. at 93-96, 136-137.

[10]  Contempt Order at 21; *see also* Sch. Ex. 2.

[11]  *Id.*

complete control.[12]  He claims he misspoke on the purpose of the transfer, but does not deny that he transferred his funds.[13]

In addition to the Wachovia Transfer, CCO received nearly $8 million from the Multi-Strategy Fund's SG Bank account.[14]  The Bank Sarasin statements refer to these transfers as "ThinkStrategy management fees" on CCO's account statements.[15]

On July 22, 2008, Kapur instructed Bank Sarasin to transfer CCO's funds to AAIA's Bank Sarasin account and to close CCO's Bank Sarasin account.[16]  On July 28, 2008, CCO transferred approximately $7,003,675.39 to AAIA's Bank Sarasin account.[17]

## 2.  AAIA

Alternative Asset Investment Advisory Ltd. S.A. is a Panamanian Corporation with Chetan Kapur solely exercising its power of attorney.[18]  The Panamanian firm Gerli & Co. was the registered agent for AAIA.[19]  The Directors of AAIA were three Panamanian entities, and the subscribers were two Panamanian individuals.[20]

On May 10, 2008, AAIA opened an account at Bank Sarasin identifying Kapur as the beneficial owner of the assets.[21]  On July 28, 2008, AAIA received $7 million from CCO.[22]  On July 31, 2008, Kapur explained to Bank Sarasin's Philip Stibolt that AAIA served as "the

---

[12]  *Id.*
[13]  SEC Ex. 33 at P. 63, L. 11 – P. 64., L. 19.  (Portion of December 4, 2014 deposition of Chetan Kapur in which Kapur testifies that the Wachovia Transfer was a personal draw from ThinkStrategy).
[14]  SEC Ex. 34 (CCO's Bank Sarasin Bank Statements).
[15]  *Id.*
[16]  *Id.*
[17]  *Id.*
[18]  SEC Ex. 35 (AAIA Account formation documents).
[19]  *Id.* at 20.
[20]  *Id.*
[21]  *Id.* at 16.
[22]  SEC Ex. 36 (AAIA's Bank Sarasin account statements).

conduit" to APC.[23]   On July 31, 2008, AAIA transferred $6,520,000 to APC's Bank Sarasin

account.[24]   Over the next two years, AAIA transferred an additional $870,855 to APC's Bank

Sarasin account.[25]

On September 5, 2008, Chetan Kapur instructed Bank Sarasin employee Philip Stibolt on

the proper direction of funds through Kapur's entities at Bank Sarasin:  CCO to AAIA to APC.[26]

Kapur wrote:

> [O]n the latest cco statement there is a cash inflow from apc to cco for
> 90,000 usd on aug. 21.  This should never happen.  Cco should only send
> monies to aaia.  Pls ensure this transaction is reversed, and noted on the
> reversal as a bank error on the cco statement.  Then there should be a
> negative balance of usd 332.668.20 in cco that should get transferred to
> aaia then apc.  This is my doing as I moved funds directly to cover the
> CCO debit as we cannot transfer a debit balance without a credit coming
> in from somewhere to cover.  There would necessarily be some movement
> from APC to AAIA to CCO to cover a debit – are you certain you want
> me to reverse?  And if so, how would you like the flow of funds to cover
> the debit?  [CCO should never have gone into debit.  But since it did,
> monies should flow from APC to AAIA to CCO – the asset protection
> structure requires we close CCO ASAP/ and the only entity interacting to
> APC is AAIA.  Thus pls accordingly cover the negative]

### 3.  APC

APC LLC is a company organized in Nevis.[27]   APC identified Kapur as the Director of

APC in its account opening information with Bank Sarasin.[28]   On July 31, 2008, APC received a

$6,520,000 transfer from AAIA.[29]

On April 9, 2010, Rosalina TissotDaguette of Bank Sarasin advised Kapur that it was

terminating the banking relationship with Kapur's entities.[30]   In the same email, TissotDaguette

---

[23]  SEC Ex. 37 (email from Kapur to Philip Stibolt).
[24]  SEC Ex. 36.
[25]  *Id.*
[26]  Tr. at 93-96, 135-137, 163-166; SEC Ex. 3.
[27]  SEC Ex. 38 (APC's Bank Sarasin account application).
[28]  SEC Ex. 39 (APC's Bank Sarasin's account statements).
[29]  *Id.*

wrote:  "We need one instruction for transferring out from APC to AAIA and one instruction from AAIA to Lilaboc.  For legal reasons, we need to know why you do not transfer out directly from APC to Lilaboc."[31]  The account remained open for another year, and on June 16, 2011, Kapur transferred $2,123,969.68 from APC's Bank Sarasin account to the Foundation's Bank Vontobel account.[32]

Kapur also used APC's Bank Sarasin to invest in alternative investments.  Kapur transferred nearly all of the alternative investments held at APC's Bank Sarasin account to the Foundation's Bank Vontobel account.[33]  The following chart provides information on the alternative investments Kapur transferred from APC to the Foundation:

| Alternative Investment | Date of Transfer to the Foundation's Bank Vontobel account | Shares | Market Value on Transfer Date | Value as of 12/31/2015 | Initial Subscription Amount |
|---|---|---|---|---|---|
| Himelsein Mandel L Series 1 (ISIN 10043196) | 11/28/2011 | 1,189.13 | $1,389,366 | $0 | $1,004,325 (8/1/2008) |
| Harbinger Class PE Series 01-10 (ISIN 11020480) | 1/16/2012 | 26.39 | $15,244 | $5,188 | $39,550 (2/11/2010) |
| Harbinger Class PE Series 10 (ISIN 10745470) | 1/16/2012 | 28.48 | $15,247 | $5,188 | $46,030 (11/17/2009) |
| Harbinger Class PE Series 07/10 (ISIN 11652574) | 1/16/2012 | 1.7 | $1,694 | $367 | $9,040 (8/24/2010) |

---

[30]  SEC Ex. 40 at 15 (emails regarding Bank Sarasin's decision to terminate relationship with Kapur).
[31]  *Id.*
[32]  SEC Ex. 39 at 18; SEC Ex. 41 (APC Debit advice for transfer to the Foundation's Bank Vontobel account).
[33]  Kapur, however, was unable to transfer APC's interest in "AJW Offhore II Ltd Ptg. Shs-B-B Series 11/08 (Initial – In Liquidation)," because of the Liquidation of the fund.  *See* AJW Offshore, Ltd., Case No. 8-13-70078 (E.D.N.Y. Bankr.).  Additional information about the of AJW Offshore, Ltd, AJW Offshore IIThe AJW Group liquidation is available at the following website:  http://ajw-group-liquidation.com/index.html

| | | | | | |
|---|---|---|---|---|---|
| Harbinger Class PE Series 2 (ISIN 10383840) | 1/16/2012 | 3.41 | $13,204 | $2,805 | $18,960 (8/24/2010) |
| Harbinger Class PE Series 1 (ISIN 4752296) | 1/16/2012 | 215.77 | $111,301 | $37,871 | $348,730 (2/13/2009) |
| Harbinger Class PE Series 10 (ISIN 10745035) | 1/16/2012 | 1.16 | $1,717 | $367 | $6,490 (11/17/2009) |
| Harbinger Class PE Series 07-10 (ISIN 11652464) | 1/16/2012 | 22.68 | $15,246 | $5,188 | $33,990 (8/24/2010) |
| Harbinger Class PE Series 6 (ISIN 10458010) | 1/16/2012 | 0.09 | $217 | $51 | |
| Harbinger Class PE Series 1-10 (ISIN 11021234) | 1/16/2012 | 1.51 | $1,711 | $362 | $8,410 (2/11/2010) |
| Harbinger Class PE Series 04-10 (ISIN 11366765) | 1/16/2012 | 1.63 | $1,708 | $361 | $9,040 (6/2/2010) |
| Harbinger Class PE Series 6 (ISIN 10458218) | 1/16/2012 | 3.38 | $1,806 | $622 | |
| Harbinger Class PE Series 04-10 (ISIN 11366493) | 1/16/2012 | 25.28 | $15,247 | $5,188 | $37,880 (6/2/2010) |
| Professional Offshore Opportunity Fund Ltd. (ISIN 3380081) | 1/17/2012 | 323.3363 | $66,263 | $2,745 | $502,325 (8/20, 2008) |
| Quantek Opportunity A Series 8 2008 (ISIN 4504666) | 2/1/2012 | 37.886 | $16,914 | $2,532 | $100,725 (10/14/2008) |
| Denholm Hall Russia Arbitrage Fund Ltd – R- (ISIN10102361) | 2/6/2012 | 38,456.78 | $291,887 | $146,905 | $1,000,000 (8/1/2008) |
| Quantek Opportunity A Series 8 2008 (ISIN 4504510) | 2/8/2012 | 381.23 | $170,483 | $25,518 | $1,003,255.48 (9/4/2008) |
| Aarkad Plc Red Pref shs (ISIN 2665830) | 3/20/2012 | 769,198.60 | $0 | $0 | $1,004,3250 (8/1/2008) |
| **Total** | | | **$2,129,255** | **$241,258** | **$5,162,100.48** |

In short, APC's Bank Sarasin account has virtually no assets that Kapur could use to satisfy the Court's Judgment entered against him, because he transferred all of the assets to the Foundation's account.[34]

## B. Bank Vontobel

### 1. Family and Children Charitable Foundation

Kapur admitted acquiring the Family and Children Charitable Foundation from the Mossfon Trust.[35]  Moreover, the Foundation's application to open the Bank Vontobel account identifies Chetan Kapur as the beneficiary of the account.[36]  On June 16, 2011 and September 11, 2011, the Foundation received $2.2 million and $47,000 from APC.[37]

Kapur withdrew approximately $150,000 from this account and directed it to the Winterbotham Trust Company and then to Bina Rai.[38]  Apart from funds sent to Mossack Fonseca, the $150,000 transferred to Bina Rai and subsequently given to Chetan Kapur were the only funds withdrawn from this account before it was frozen.[39]

As set forth in the above chart, the alternative investments were worth over $2 million when Kapur transferred the assets to the Foundation's account in 2012.  Unfortunately, the alternative investments declined in value significantly and were worth only $241,259 as of December 16, 2015 (the Commission's most recent statement).[40]  The total value of the

---

[34] SEC Ex. 39 (APC's account statement).
[35] Tr. P. 82, L. 5-20.
[36] SEC Ex. 42 (Bank Vontobel Know Your Customer profile for the Foundation).
[37] SEC Ex. 43 (Summary of deposits and withdrawals from account.).
[38] *Id.*
[39] *Id.*
[40] SEC Ex. 44 (the Foundation's December 2015 Bank Vontobel account statement).

Foundation's frozen Bank Vontobel short-term investments was $2,047,615 as of December 16, 2015.[41]

## DISCUSSION

The Swiss Records reveal how Kapur transferred his money from ThinkStrategy's Wachovia account for ultimate deposit into the Foundation's Bank Vontobel account. Despite his statements to the contrary, the money in the Foundation's Bank Vontobel account is Chetan Kapur's money. He funded CCO with his money. He then transferred his money from CCO to AAIA, from AAIA to APC, and finally from APC to the Foundation, as shown in the following chart:

---

[41] *Id.*



On July 1, 2015, the Court found that Kapur controlled the funds held in the Foundation's Bank Vontobel account.  The Swiss Records supply additional support to conclusively establish that Kapur funded the Foundation's account with his money.  Any suggestion that Kapur no longer controls the Foundation's Bank Vontobel account, or that he is unable to repatriate these funds is incongruous with the Swiss Records and the Court's prior findings.  Kapur attempted to hide his assets using two Swiss Banks, a Panamanian company, a Nevis company, a British Virgin Islands Company and a Panamanian charitable foundation.  The Commission has exposed his asset protection structure and found Kapur's money.  The Court's conclusion in the Contempt

Order remains undisturbed but narrowed:  to purge contempt Chetan Kapur must return the funds

held in the Foundation's Bank Vontobel account.

## REQUESTED FINDINGS

Based on the foregoing, the Commission respectfully requests that the Court supplement

the July 1, 2015 Opinion and Order by making the following findings:

1. CCO Ltd. is a British Virgin Islands company incorporated on February 2, 2007.
2. Kapur was a director of CCO Ltd.
3. CCO Ltd. maintained an account at Bank Sarasin in Switzerland.
4. On July 27, 2007, Chetan Kapur transferred $2,144,147.20 from ThinkStrategy Capital Management LLC's Wachovia account to CCO Ltd.'s Bank Sarasin account.
5. The $2.1 million transferred to CCO Ltd. was Chetan Kapur's money.
6. Alternative Asset Investment Advisory Ltd. S.A. is a Panamanian Corporation with Chetan Kapur as sole power of attorney.
7. On May 10, 2008, AAIA opened an account at Bank Sarasin identifying Chetan Kapur as the beneficial owner of the assets.
8. On July 28, 2008, AAIA received $7 million from CCO Ltd.
9. On July 31, 2008, AAIA transferred $6,520,000 to APC's Bank Sarasin account.
10. APC LLC is a company organized in Nevis.
11. APC identified Kapur as the Director of APC in its account opening information with Bank Sarasin.
12. On July 31, 2008, APC received a $6,520,000 transfer from AAIA.
13. On June 16, 2011, Kapur transferred $2,123,969.68 from APC's Bank Sarasin account to the Family and Children Charitable Foundation's Bank Vontobel account.
14. Kapur also transferred alternative investments worth approximately $2,129,255 from APC's Bank Sarasin account to the Foundation's Bank Vontobel account.
15. As of December 16, 2015, the value of the alternative investments held in the Foundation's Bank Vontobel account was $241,258.
16. As of December 16, 2015, the value of the Foundation's frozen Bank Vontobel short-term investments was $2,047,615.

## CONCLUSION

The Commission requests that the Court consider this submission as additional support

for the Commission's request to hold Chetan Kapur in contempt until he returns the funds held at

the Foundation's Bank Vontobel account.  In addition, the Commission respectfully requests that

the Court make the proposed findings regarding the funding of the Foundation's Bank Vontobel

account with Chetan Kapur's money.

Dated: February 28, 2017

<div style="margin-left: 40%;">

s/MICHAEL J. ROESSNER
Michael J. Roessner
Assistant Chief Litigation Counsel
Division of Enforcement
United States Securities and Exchange Commission
100 F Street, NE
Mail Stop 5631
Washington, DC 20549-0022
RoessnerM@SEC.gov
Telephone:    202.551.4347
Cell Phone:   202.412.1277
Facsimile:     703.813.9366

</div>

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 28, 2017, I caused service of the foregoing document

captioned, UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S

MEMORANDUM OF LAW, to be served by ECF and email on the following:


Eric M. Creizman
Attorney at Law
Creizman LLC
565 Fifth Avenue, Fl. 7
New York, New York 10017
ecreiz@creizmanllc.com

<div align="right">

<u>s/MICHAEL J. ROESSNER</u>
Michael J. Roessner
Attorney for Plaintiff
United States Securities and Exchange Commission
100 F Street, N.E., Mail Stop 5631
Washington, D.C. 20549
(202) 551-4347 (Phone)
(202) 772-9223 (Fax)

</div>